Harriet BEILKE and Ralph
Beilke, Appellants,

v.

Larry D. DROZ, John E. Gegner, and
Beverly Gegner, Appellees.

No. 66632.

Supreme Court of Iowa.

March 17, 1982.

Michael J. Mathis of Preloznik, Mathis &
Rhode, Madison, Wis., for appellants.

Richard G. Santi of Ahlers, Cooney, Dor-
weiler, Haynie & Smith, Des Moines, for
appellees.

Considered by REYNOLDSON, C. J., and
LeGRAND, UHLENHOPP, McCORMICK,
and McGIVERIN, JJ.

UHLENHOPP, Justice.

This proceeding presents a certified ques-
tion of law from a federal court regarding
the requirement of identity of parties under
section 614.10, The Code 1981.

Within two years from the occurrence of
the death and injuries involved, plaintiffs
Beilke commenced wrongful death and per-
sonal injury actions in a federal district
court in Wisconsin against Iowa Mutual
Insurance Company, liability insurer of
present defendants Droz and Gegner, who
were the driver and the owners of the vehi-
cle in the incident. The actions were con-
solidated and were subsequently dismissed
under a "no action" clause in the insurance
policy. Within six months thereafter, but
more than two years from the occurrence of
the death and injuries, the same plaintiffs

commenced second wrongful death and personal injury actions in the same court against the present defendants. Those actions also were consolidated, and they were subsequently transferred to the federal district court for the Southern District of Iowa.

Iowa limitation statutes apply to the suits arising out of the death and injuries. The second set of actions is barred under the two-year limit in section 614.1(2) of the Iowa Code unless it constitutes a continuation of the first set of actions within section 614.10 of the Code:

If, after the commencement of an action, the plaintiff, for any cause except negligence in its prosecution, fails therein, and a new one is brought within six months thereafter, the second shall, for the purposes herein contemplated, be held a continuation of the first.

Whether the second set of actions comes within that section depends in turn on whether identity of parties defendant exists in the two sets of actions.

The federal district court in Iowa held that identity of parties does not exist and granted the present defendants summary judgment. Plaintiffs appealed to the United States Court of Appeals for the Eighth Circuit. That court certified to us the following legal question as authorized by chapter 684A of the Iowa Code:

Whether the parties in this suit are "the same" for purposes of the Iowa Code Ann. § 614.10.

█ I. The general rule is that for section 614.10 to apply, the parties in the two actions must be the same. *Marks & Shields v. Chicago, R.I. & P. Ry.,* 184 Iowa 1352, 1359, 169 N.W. 764, 766 (1918) (first suit by partner, second suit by partnership: "In our opinion, the present action, in which the parties plaintiff are not the same, can in no wise be treated as a continuation of the former . . . ."); *Murphy v. Board of Supervisors,* 205 Iowa 256, 259, 261, 215 N.W. 744, 745, 746 (1927) (first action against county and its treasurer, second action against county supervisors to require them to have

treasurer repay taxes: " 'New one,' as used in the [statute], relates to a second 'action' based upon the same cause as the original. . . . Moreover, the parties must be identical. . . . Clearly, the parties are different and the beginning of the lawsuit, wherein said county and [the treasurer] are defendants, is not the commencement of a proceeding against the members of the board of supervisors."). In another case the first action (the *Truckenmiller* case, *Hartz v. Truckenmiller,* 228 Iowa 819, 293 N.W. 568 (1940)) was against drainage district officers to require them to levy taxes to pay bonds; Brunson, the county treasurer, was improperly joined as a defendant. The second action was against county treasurer Brunson to recover for alleged irregularities in disbursing revenues from drainage district assessments. *Hartz v. Brunson,* 231 Iowa 872, 2 N.W.2d 280 (1942). Holding that the second action was not a continuation of the first one, this court stated:

In order to come within the provisions of section [614.10], there are certain requisites:

1. The failure of a former action not caused by the plaintiffs' negligence.

2. The commencement of a new action brought within six months thereafter.

3. The parties must be the same.

4. The cause of action must be the same.

. . . .

Thus we find that this court in the *Truckenmiller* case said that the causes of action against Brunson and the other defendants were separate and distinct causes of action. That the parties in the two causes of action are different; that the remedies sought are different. That the *Truckenmiller* case is a mandamus action; that the action against Brunson is at law.

*Id.* at 877, 878–79, 2 N.W.2d at 283, 284. *See also* 51 Am.Jur.2d *Limitation of Actions* § 318 (1970); 54 C.J.S. *Limitations of Actions* § 293 (1948); Annot., 13 A.L.R.3d 848, 852 (1967).

II. Courts hold generally, however, that the requirement of identity of parties is met if the change in parties is merely nominal or if the interest represented in the second action is identical with that in the first one. After stating the identity requirement regarding parties, the editors qualify it as follows in 51 Am.Jur.2d *Limitation of Actions* § 318, at 821 (1970):

On the other hand, while the second suit must be for the same cause of action and against the same essential parties, it need not be an exact copy of the first suit and need not necessarily be brought against all the defendants who were parties in the dismissed suit, unless all such defendants were necessary parties to the first suit. Moreover, a change of parties does not preclude an application of the statute where the change is merely nominal or the interest represented in the renewed action [is] identical with that in the original action. The fact that the first suit was against the defendant personally and the second was against him in a representative capacity is immaterial where the cause of action and the subject matter are identical and the parties are substantially the same.

In cases involving a change in parties in respect to a husband and wife, a statute permitting renewal of an action has been held applicable under proper circumstances. And in cases where a change in parties involved a partnership and its members, some cases have held such a statute applicable, while others have refused to apply the saving law. The same is true in connection with cases involving an assignee or transferee, and cases involving the substitution of a guardian for an infant.

The editor summarizes the qualification as follows in Annot., 13 A.L.R.3d 846, 852 (1967):

No general test or guiding principle has been laid down by the courts for determining when a change of parties may be regarded as nominal or the interests represented in the two actions may be considered as identical in this respect. As in the case of almost any other legal principle, the question of when such rule applies will eventually depend on the circumstances of each case. There are, however, certain situations where the courts have almost uniformly applied the saving statute, despite a change of parties. These situations include (1) where in a wrongful death action the decedent's administrator was substituted as plaintiff; (2) where an action was renewed by an assignee or transferee of the plaintiff in the former action; (3) where there was a change in defendants who were subject to joint liability; and (4) where an action was renewed against a successor in interest of the original defendant.

III. We come to the pertinent considerations in the instant case. Plaintiffs argue that although *legally* a liability insurer and insured are not identical and a third party cannot sue the insurer before he has a judgment against the insured, *Cushman v. Carbondale Fuel Co.*, 122 Iowa 656, 98 N.W. 509 (1904); Note, 15 Iowa L.Rev. 73 (1929), in *reality* the interests of the insurer and insured are alike: when the third party does obtain judgment against the insured, the insurer must pay it to the extent of the policy limits and may be sued by the injured party if it does not do so after an execution against the insured is returned unsatisfied. § 516.1, The Code. Under the statute the responsibility of the insurer is thus not merely to indemnify the insured who pays a judgment; it is to pay the judgment itself to the amount of the policy. On the other hand, defendants list a number of respects in which the duties of the insurer and insured differ.

Most of the decisions cited by the parties in support of their respective positions are distinguishable on the statutes, contracts, or facts involved. Two decisions cited, however, deal specifically with the liability insurance situation, and they reveal that a prior suit against a liability insurer may or may not invoke a continuation statute in a subsequent suit against the insured, depending on the particular situation. One of those decisions is *Luft v. Factory Mutual Liability Insurance Co.*, 51 R.I. 452, 155 A. 526 (1931). The first action was against the

**915**

insurer, but the insurance policy did not cover the loss and the action was dismissed. The court held that a second action against the insured was not a continuation of the first one.

The other pertinent decision is *Hidalgo v. Dupuy*, 122 So.2d 639 (La.App. 1960). Although that case involved "solidary" liability and although Louisiana allows direct actions against insurers, we do not regard those factors as distinguishing considerations of substance. "Solidary" is a civil law term "signifying that the right or interest spoken of is joint or common." *Black's Law Dictionary* 1565 (Rev. 4th ed. 1968). The first action, against the insurer, was dismissed under a no action clause in the policy; the accident occurred in Alabama and the Louisiana direct action statute did not apply. The *Hidalgo* court held that a second action, against the insured, came within the Louisiana continuation statute. The court stated:

Under LSA-Civil Code Article 2091, "There is an obligation *in solido* on the part of the debtors, when they are all obliged to the same thing, so that each may be compelled for the whole, and when the payment which is made by one of them, exonerates the others toward the creditor." By the terms of its policy the defendant's insurer had agreed, subject to the limits and conditions of the policy, "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile." (Policy coverage A.) By the terms of the insuring agreement, both the insurer and its insured are obligated for the same debt (namely the insured's tort liability covered by the policy), and payment made by either of them satisfied the liability of the other, so that within the statutory definition they are solidary obligors for the payment of the damages for which the insured is legally liable within the coverage of the insurance policy.

*Hidalgo*, 122 So.2d at 643. This rationale was applied in *Pearson v. Hartford Accident & Indemnity Co.*, 281 So.2d 724 (La. 1973); and *Simmons v. Travelers Insurance Co.*, 295 So.2d 550 (La.App.1974).

Although the Iowa renewal statute does not speak in terms of solidary liability, the ultimate responsibility of a liability insurer and insured in Iowa are in reality sufficiently alike by virtue of section 615.1 to bring their situation within the rationale of *Hidalgo*.

The certified question does not include the coverage complication in *Luft* or other problems. As the question is propounded, we apply *Hidalgo* and answer affirmatively.

The clerk is directed to proceed in accordance with rule 458 of the rules of appellate procedure.

CERTIFIED QUESTION ANSWERED.